case number 24 1 3 6 2 David McNair versus Collin Pratt argument not to exceed 15 minutes per side mr. Tompkins you may proceed for the appellant this is our appeal I thought I'd use my time your honors to address what I believe are the two facts that the magistrate judge as well as the circuit or the court judge felt created questions of fact that precluded summary judgment on the issue of qualified immunity those facts as I understand them to be include whether or not mr. Pratt's comment to mr. McNair at least as purported to be said by mr. McNair to he's going to make him kiss the concrete being one and two the investigation and subsequent termination of mr. Pratt after the Michigan Department of Corrections conducted its investigation I believe those two facts are what the court the district court relied upon denying motion both as it relates to the Eighth Amendment claim and the qualified evaluate in the context that I believe plaintiff counsel myself or an agreement has been set forth on the factual record as presented at the trial court was made in the context of mr. McNair actively resisting and disobeying repeated orders by fellow officer counsel sorry counsel can you hear me I can yeah okay in his deposition though right before he says that that kiss the concrete comment was made he's asked whether he was resisting and he said he wasn't he said no I never resisted at any point in time when did you ever pull away from mr. Pratt no why is that not we can screw the record in the light most favorable to him so I don't think he at least physically is resisting that's something that we have to accept is true right I think that's probably correct your honor but I think that that point goes to the fact that was not pushed back against it all at the trial court level by mr. McNair's counsel that was what was presented at the trial court that what mr. Pratt said and was not contested I understand the deposition transcript of mr. McNair's testimony but I think globally when viewed in context it does not satisfy an 8th Amendment violation your honor so our go ahead well our at this point are you wanting to argue more the no violation or the qualified immunity not clearly established well I think that I could argue I guess I was your honor gonna argue both sort of dovetailing one I mean I guess that the question there is it at least based on similar to what judge now Bandian says in the question of whether there was a violation if you believe everything that McNair says there may well have been but what cases what case did they present because the burdens on them to show qualified immunity and what's your response to their case for clearly established I don't think that they did present a case at the trial level your honor I think it was the Whitley versus Albers case at the only case they read that they cited which is what judge enough the trial judge reference in her order adopting the recommendation by the magistrate judge your honor so I don't think that they did support the clearly established case at the trial court level none at all you think correct okay we'll see what they say go ahead the other point I would make on the just to amplify the record as it relates to mr. Pratt being terminated I think it's important for the coat the court to understand that he was in fact reinstated by the Department of Corrections the violence so in the end what this whole incident cost him a couple of months pay is that roughly right I think it was more than a year your honor I think it roughly he was terminated at some point in August of 2019 he was brought back official start date in November of 2020 but he did he didn't get any pay for that period he did not your honor and just as an aside he's sort of going at it alone here where he's not being defended by Michigan Attorney General nor being identified by the Department of Corrections for whatever that's worth the other point on that and I'll stop belaboring this point is that the Michigan Department of Corrections has sort of reversed course and totally dismissed waived expunged if you will mr. Pratt's employment records such as this does not exist on on that in his file so if this were to proceed to trial any testimony relative to mr. Pratt having been deemed to have violated any policy of the department would I believe be initiated by the notion that he was brought back on with those charges having been completely dismissed and well let me ask you this just a couple of kind of side points I guess there is a video of this incident I your position would be what on whether we could consider that video thank you your honor my position is that it was not considered by the trial court it's both referenced in the magistrate's report recommendation it's a footnote for page 11 and then looking at judge Ness order and opinion adopting the report recommendation there's no reference to the video are my position your honor with respect would be that it's not considered by this panel so you see the other side does make reference to it as though it would be favorable to them if we did consider it and I have looked at it do you consider it's favorable to them I think for my position but I think it has to be reviewed and viewed in context of the critical incident report which was what was generated by the Department of Corrections leadership staff that I think puts a little bit more context to the video well there's no there's no audio is there so there's no it seems to me that there's no your clients testimony about any verbal resistance is the only testimony that there is is that correct that he was there other than I think the critical is a is a report that I believe provides some narrative support for mr. Pratt's position there's recitations that relate to an officer Herrera would that be admissible evidence I believe so but the summary judgment level your honor was considered by the magistrate judge and as well as the district court judge as I as I read it counsel mr. mr. McNair does say I thought at the point where the officer is saying stop from the officer's point of view he's saying you know stop resisting let's get calm he does cuss him out at that point I thought he admitted to that did your honor that sort of continuum started well before that with another officer that's why mr. Pratt interceded and that started this entire continuum it brings us where we are today and I don't think that's been disputed by mr. McNair Norris counsel there was there was an active situation going on that continued to develop is it not fair to view this record is showing that permitting a possible finding that after mr. McNair was you know after he'd been effectively taken charge of that the shove to face down to the floor was not a gratuitous act of violence on the part of your client it's a fair question your honor I think our position would be that it was in the sort of the heat of the moment what's taking mr. McNair from the standing position to the ground is not the most graceful of acts especially with the landing surface being what it is concrete if you will are you are you familiar with our case of Cordell versus McKinney I'd offhand your honor I apologize well basically what happened in that case was the inmate in question had a verbal altercation with the officer and then the officer led the inmate away and slammed his head into a wall gratuitously and that might that not of course mirror the exact facts here in the exact course of the confrontation between your client at McNair but it why is it so dissimilar that it might not permit a finding that this kind of gratuitous act of violence precluded qualified immunity thank you your honor I think that the differentiation is that it's from a standing to a position of being on the ground which obviously the forces of gravity being what they are would differentiate that from a situation where prisoners force up against the wall a standing wouldn't wouldn't the key thing be not whether it was the floor or the wall but whether it was seen as a gratuitous act of violence on the part of the officer I guess factually I would distinguish it your honor just by virtue of the motion being from from a standing to a position of going on the ground as a takedown as what mr. Pratt deemed to be an appropriate use of force can I ask you if you are you a familiar at all with the Burnett a case from a couple of years ago I might ask your colleague the same thing where there were somewhat similar circumstances but the court seemed to hold well I'll let first I'll ask whether you know the case where there seems to have been some degree of resistance you can argue about how much resistance and the court upheld the district courts grant of qualified immunity there so if you're not familiar with it we can ask the other side as well thank you thank you okay thank you counsel we'll hear from mr. Radner now good afternoon your honors this is Solomon Radner on behalf of mr. McNair in this particular case the testimony of Mr. McNair alone creates a question of fact as to whether an 8th Amendment violation took place based on sorry the what the what alone you said something alone would do it I didn't hear the testimony the testimony of of mr. McNair which is basically I didn't do nothing right well he did he does he does it's something like what isn't it even McNair says he said you say anything else more and I'll make you kiss the concrete and mr. McNair says fuck you with it with or without pushback or resistance which we have to take his view of that part if the only way that qualified immunity can possibly come into play here for the defendants for the defendant is if my client used some sort of physical resistance physical attack if you just say F you to a prison guard and he's allowed to take you while handcuffed and smash your face into concrete and smash your face into the wall we're gonna have a real problem in our prisons why isn't we have a number of cases and I noted that your brief seemed to be kind of light on the citation front we have a cases that talk about active verbal resistance being inconsistent with somebody being compliant and I'm curious because not only is there a statement in McNair in your clients deposition but there are other statements that are made in Pratt's deposition that are essentially undisputed even if there's no physical resistance why isn't the verbal resistance enough to justify the use of the force there still has to be a reasonableness standard if you are engaged in verbal resistance that does not allow them well let me take that back there's no absolutes about what can take place if for example you're refusing to walk out of your cell not you God forbid but if somebody is refusing to walk out of their cell and and the guards are telling them come on up let's go come on you got to come out we got to take you to the hole for whatever reason whatever may be going on and he absolutely categorically refuses to and says no I'm not doing anything don't put your hands on me that's verbal resistance telling the guard that you're walking with down the hallway F you is not verbal resistance you're not resisting anything you can't get slammed down for words unless those words mean something if you say I'm gonna punch you I'm gonna kick you I'm gonna kill you I'm gonna I'm gonna do something to you that becomes a completely different story than if you're just walking not resisting not engaging in any sort of resistance and you just say F you to a guard when they when they get if we do take the video and let me ask you about that because you seem to like the video if you take the video he gets to the segregation unit so he hasn't whatever's been happening and according to the corrections officers he's been being yelled at all along but he gets to the to the door and he's got to unlock the door and he's got at least a feisty prisoner shall we say and he puts him up he doesn't slam him into the wall he puts him up against the wall and then he's trying to figure out how do I handle this guy and how do I unlock the door isn't that a fair reading of the of what's happening you know before the the last event is that fair or not I think that's an unfair reading of the video watching of the video okay because well that in conjunction with my client's testimony which again as far as mr. Pratt's testimony if it can contradict anything my client said about what happened here it goes out the window for purposes of this appeal but but I digress the point is on the video you see them walking you don't see my client doing anything that would suggest resistance on the video now you could say that he was saying something and that's what mr. Pratt claims my client claims otherwise but just what you see on the video what you see there is you see two people walking you don't see my client engaging in any sort of resistance my client is handcuffed then suddenly without any sort of with any sort of pretext anything going on my client gets slammed up with his face into the bars and then slammed down onto the concrete while handcuffed that's what I see happening on the video I don't think it's fair to say he was fumbling for the keys and since he was fumbling for the keys what else is he supposed to do with mr. McNair other than slam his face up against the bars and then he was faced the feisty for having his face slammed up against the bars so then the judge the officer had no choice but to slam his face onto the concrete I I'm not trying to be disrespectful I don't see that in the video okay that's fair on the qualified immunity point I asked your colleague or judge now Bandy and first or Givens about Cordell and then Burnett are you familiar with either of those cases somewhat Cordell I've heard of Burnett I I don't know that offhand okay but if so if we go back because it is your burden to dispute qualified immunity is Whitley versus Albers really the the case that you rely on to show that something was clearly established I could have done a better job with the briefing I'll admit that oh did you did you is that the only one you cited below or did you even cite that one below the in my briefing below you mean yeah I mean because after all that's what we're reviewing judge Neff and we're saying did she get it right when she said there's no that there is clearly established law and so I'm asking what you presented to her and then am I right that Whitley is really what you rely on here well there's there's a few cases that I cite I cited a there's a few cases that if I could go through them but I mean one of them is the Caldwell versus Moore case which which says that determine the motivation of the courts should consider the reasons or conduct type of conduct force applied and the extent of the inflicted injury there's the Williams case in the Wilson versus cider case did you cite those to judge Neff yes I'm right now referring to my what you did below okay yeah that's what I pulled up right now I'm looking at my brief in opposition okay those cases were definitely cited I go through the de minimis argument that was made that that that shouldn't work and then yes I also referred to Whitley and then also to Pearson Pearson versus Callahan case and that's I think this is a case that there are sometimes you see cases where it's really case dependent where the same action in one case depending on how it's looked at and how it's how it's construed by a court can be qualified immunity or not qualified immunity this case with my clients testimony alone defeats qualified immunity but we're looking for council I mean we're looking this is the we are looking for cases that clearly establish this principle whatever you're trying to establish and you know normally we look for cases that are similar on the facts they don't have to be exact they don't have to be on all fours but I mean you're not really helping us out here and it is your burden so I mean I'm not sure why we need to bend over backward and help you out with you know Cordell Burnett whatever it is I mean if you're not gonna bother to find the cases why do we have to do it well my sincerest apologies your honor I'm certainly not intending any disrespect or asking you to bend over backwards this was just a case that just the the most basic definition without actually looking at too specific and this could just been my mistake in in how I briefed this I could have found more on point cases but this was a case that to me on its face the conduct of the defendant was egregious such that the most basic cases alone of clearly established is all you really need and that's that's how I kind of viewed it and I see in hindsight I probably should have I definitely should have been I should have cited more cases and more cases that are on point but when I was looking at the defense counsel's motion and responding to it responding to the appeal the main thing I was looking I was looking at this like you got to be kidding me how in the world can this possibly be qualified immunity based on the record so I look for the most basic cases I could have looked for more I could have cited more and my apologies for not doing that if you allow me to I'll file a supplemental brief and I'll include a lot more cases much more fact-specific showing that a guard is not allowed to smash my client's face into the brick wall and I'm sorry into the concrete floor I'm sure there are cases on point the cases that that the court has asked about are certainly on point most likely I would imagine and I can brief that issue but this to me seemed to be among the most egregious cases caught on video of any prison guard I've ever seen usually these cases that I have for prisoners are just he said she said and no video and now there's actually video supporting my client's version of events and they're still arguing clearly established and qualified immunity it kind of took me for a little bit of a shot so I thought the most basic cases is all I really needed to overcome qualified immunity and again I don't mean any disrespect I'm not asking the court to bend over backwards but if it would be helpful and if the court would allow me to submit a supplemental brief I will now that's okay unless the court has any more questions for me I think the court's got a pretty good grasp on what's going on I'll relinquish the rest of my time okay okay thank you counsel well he'll hear rebuttal just briefly your honor appreciate it I wanted to touch back just on the evidence of any active resistance on the part of mr. McNair before he was taken to the ground and again I'd point to it's the critical incident report 47 3 is the reference for the record there's a paragraph a timestamp 1433 and 34 seconds where it doesn't give a recitation of what officer Pratt said but rather an investigator puts in his own words terms such as mr. McNair began actively resisting the escort by tensing his arm and attempting to turn his head towards officer Pratt and it continues officer Pratt began giving loud verbal commands to stop resisting during the escort this continues prisoner McNair continued to the part that you just said there about loud verbal commands is that based on anyone else's hearing something or is that just reciting what Pratt says in his deposition your honor I won't pretend to know that specifically but what I can say is that the way that this critical incident report is generated that if it's a if it's attributable to officer Pratt the report says something akin to officer Pratt said and in this specific paragraph it differentiates and my understanding is that these are conclusions made by lieutenant Maxwell who authored the report which I believe substantiates active resistance you're referring to I think and I'm asking that's a question the point in time that is prior to the point during the escort not immediately before the act of slamming the inmate to the ground to the face to the ground right that's fair this is removed in time it's what was happening at an earlier point in time I think that's a fair characterization that I would yield the rest of my time unless the panel has any additional questions no thank you thank you mr. Tompkins the case will be submitted